## Chicago, Rock·Island & Pacific Railway Company v. Box.

### Opinion delivered May 1, 1911.

1. Master and Servant—Evidence of Employment.—Proof that a certain night watchman had authority from defendant to hire a substitute when he was unable to work and that he hired plaintiff under those circumstances is sufficient to sustain a finding that plaintiff was an employee of defendant. (Page 110.)

2. Same—When Negligence Question for Jury.—It was proved that plaintiff, an employee of defendant, was injured while crossing defendant's bridge at night, on account of the defective condition of the floor of such bridge, of which he had no knowledge; also that defendant had undertaken to floor the bridge, and that its employees were accustomed to walk across the bridge in the course of their employment. *Held* that the question of defendant's negligence was for the jury. (Page 111.)

3. Appeal and Error—Harmless Error.—The erroneous admission of testimony that people generally were accustomed to walk across defendant's bridge was not prejudicial where the cause was properly submitted to the jury upon the issue that defendant's employees were accustomed to walk across the bridge during the course of their employment. (Page 111.)

Appeal from Logan Circuit Court, Southern District; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT.

Ed Box brought this suit against the Chicago, Rock Island & Pacific Railway Company to recover damages for injuries sustained by him on account of the alleged negligence of said Railway Company. According to his own testimony, he was hurt on the night of November 18, 1909, while walking across one of defendant's railroad bridges in the town of Hartford, Ark. He was on his way to watch one of defendant's engines, and had been hired by the regular night watchman. The bridge was in the railroad yards, and was about 100 yards west of the depot. Four tracks were laid across the bridge, and it was floored. The railroad employees usually walked across the bridge while engaged in or going to and from their work. On the day in question Box had been working as pumper in the water service of the railroad company. On that night the regular night watchman employed him to take his place because of the sickness of his child. Box had been employed by him as a substitute on

other occasions previous to this time. On his way to the engine, he was walking across the bridge between the main and house tracks, and fell into an open space left there by the workmen, who were repairing the bridge. Box did not know this, and there was no light or other signal there to warn him of the danger. Other evidence in his behalf tended to show that the bridge was used as a crossing both by the employees of the company and by the public generally.

L. A. Bronson, the regular night watchman, was a witness for the defendant, and testified that he had employed Box to take his place for him that night and expected to pay him for it. He said that he had used Box several times to watch the engine, and that there was a kind of custom for a regular man to call a man in his place in an emergency; that he did not know that any of the railway officers knew about him getting Box to take his place. On cross-examination, he was asked this question: "What were your instructions about when you had to be off?" and that there was a kind of custom for a regular man to call a understood the work."

Other evidence will be referred to in the opinion.

The jury returned a verdict for the plaintiff, and defendant has duly prosecuted an appeal to this court.

*Thomas S. Buzbee* and *George B. Pugh,* for appellant.

1. There is no negligence shown on the part of appellant. There is no proof that the rules of the company required any warning of danger to be given to employees when repairs to its tracks and road bed are being made, nor any evidence that appellant was accustomed to place a light or danger signal where it had torn up a portion of one of its bridges in repairing it, nor to give warning in any manner to employees where it had torn up any part of its tracks while repairing them. Even if appellee's duties required him to pass along the place where the accident occurred (which is not admitted), appellant was not an insurer of his safety in doing so. 61 Atl. 359. Appellee is not entitled to recover for injuries received while following a route to his work that was more dangerous than either of several other routes he might have chosen. 93 Ark. 205; 87 Ark. 471; 86 Ark. 507; 82 Ark. 534; 54 Am. Rep. 5.

2. The proof shows that appellee was not employed by the

appellant; and there is no presumption that one employee of a railroad company has authority to employ another so as to make that other a servant of the company. 96 Ark. 558; 104 S. W. 382; 51 Am. & Eng. R. Cas. (N. S.) 213.

3. The court erred in admitting testimony to the effect that the public generally at Hartford used this portion of appellant's yard in going from one side of town to the other.

*Jesse A. Harp,* for appellee.

Since the bridge had always been covered and used by the employees of appellant, appellee had the right to assume, in the absence of knowledge or warning of its actual condition, that it was still covered and safe for passage. A railway company is not, it is true, an insurer of the safety of its premises and roadway, but it is its duty to provide for its employees a reasonably safe place and reasonably safe appliances; and in this case it was appellant's duty to provide appellee a reasonably safe way of travel to the point where he was to perform his duty.

The danger in this case may be classed as hidden. It was a dark night, the bridge was left uncovered, and no light provided nor barriers erected. 87 Ark. 471; 65 Ia. 224; 54 Am. Rep. 5; 86 Ark. 507; 82 Ark. 188.

2. The question whether or not the relation of master and servant existed between appellant and appellee was one of fact to be determined by the jury from the evidence under proper instructions of the court. 2 Labatt, Master & Servant, 1867; 26 Cyc. 971. The jury's verdict settles this question in favor of the appellee.

HART, J., (after stating the facts). 1. It is contended by counsel for defendant that, under the evidence, the jury were not warranted in finding that plaintiff was an employee of the company. We do not agree with them. The regular night watchman, who was introduced as a witness by the defendant, testified that on the night plaintiff was injured he was not able to watch the engine because his child was sick, and he hired plaintiff to work in his place. On cross examination he said that his instructions were to hire a man who understood the work to take his place when he could not be there. This was sufficient to warrant the jury in finding that the regular night watchman

had authority to hire a substitute when he was unable to do his own work.

2. It also insisted that no negligence on the part of the defendant is shown. In determining this the question is not whether the defendant owed its servants the duty of flooring the bridge, but, having elected to do so, can it be said as a matter of law that there was no negligence in creating a deceptive condition and giving no warning to plaintiff of that condition? It is true that the evidence showed that there were other ways for plaintiff to go to his work, but it is also true that the evidence shows that the plaintiff knew that the bridge was kept floored, and that he and the other employees of defendant had long been accustomed to walk across the bridge in the course of their employment. The bridge was in process of repairs, and the open space where the floor had been torn up was left unguarded. Counsel for defendant insists that it was not practicable to leave a light there because of the running of the trains. It is true that a light could not be left between the rails, but one might have been placed between the tracks or on one end of the bridge to warn the employees of the danger of crossing the bridge in the usual manner. Failing to do this, defendant should have notified all of its employees who might have occasion to cross the bridge of its defective condition. The night on which plaintiff was injured was dark, and he had no knowledge or warning of the condition of the bridge. The defendant having elected to keep the bridge floored, and its employees being accustomed to walk across it whenever the occasion therefor presented itself during the course of their employment, we think the question of negligence or not of the defendant was a jury question.

3. The admission of testimony to the effect that people generally were accustomed to walk across the bridge was not competent because it was not germane to the issues raised by the pleadings. We do not think it was prejudicial, however, because the undisputed evidence showed that the defendant's employees had long been accustomed to walk across the bridge during the course of their employment, and the case was submitted to the jury on that issue.

The judgment will be affirmed.

KIRBY, J., dissents.